36 F.3d 746
 63 USLW 2209, 18 Employee Benefits Cas. 2121
 Charles HOWE; Robert Wells; Ralph W. Thompson; Charlotte
Chiles; Patrick Mousel, on Behalf of Themselves and as
Representatives of a Class of Persons Similarly Situated;
John Altomare, to the extent of his claims arising from
becoming disabled while working for Massey Ferguson, Inc.;
Charles Barron; Alexander Charron; Anita Crowe; Ray Darr;
Doris Guidicessi; Barnett Lucas; Robert Skromme; and
Estate of Walter Smith, individually, Appellees/Cross-Appellants,
v.
VARITY CORPORATION and Massey Ferguson, Inc.,
Appellants/Cross-Appellees.
 Nos. 93-2056, 93-2111.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 19, 1994.
Decided Sept. 29, 1994.
 
 Floyd Abrams, New York City, argued (Thomas J. Kavaler and Howard G. Sloane, New York City, William J. Koehn and Deborah M. Tharnish, Des Moines, IA, Gerald P. Greiman and H. Todd Iveson, St. Louis, MO, on the brief), for appellants.
 H. Richard Smith, Des Moines, IA, argued (Robert J. Schmit and William A. Gengler, Minneapolis, MN, on the brief), for appellees.
 Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and STOHR,* District Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 This case arises under the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001 et seq. (ERISA). The plaintiffs are two classes of former employees of Massey Combines Corporation (MCC) and ten individual former employees of Massey-Ferguson, Inc. (M-F). The defendants are Varity Corporation, which controlled MCC, and M-F, Varity's wholly owned subsidiary. The District Court[1] held in favor of one class and the ten individual plaintiffs, and against the other class. We affirm, with some modification of the remedy. We hold, among other things, that individual plan beneficiaries have a right of action under ERISA, 29 U.S.C. Sec. 1132(a)(3), for breach of fiduciary duty.
 
 I.
 
 2
 We state the principal facts as found by the District Court. It is appropriate to use these findings as a predicate because the defendants do not contend that any of the findings are clearly erroneous.
 
 
 3
 M-F is a wholly owned subsidiary of Varity. It sells farm implements and related parts manufactured by other subsidiaries of Varity. On May 9, 1986, Varity formed MCC, a new entity, and transferred to MCC certain lines of business. This reorganization was given the name "Project Sunshine." MCC took over the manufacture and sale of self-propelled combines and four-wheel-drive tractors. Both of these product lines had been declining during the 1980s. The year 1986 was the all-time low for sales of self-propelled combines. Varity's purpose in forming the new concern was to put its bad eggs into one basket, so to speak. It would not have to show the large losses associated with the combines and tractors on its own financial statement, and it hoped to rid itself of substantial obligations for employee benefits due or to become due to workers in the transferred lines of business.
 
 
 4
 In order to accomplish the latter objective, Varity needed to get the employees of M-F who had been engaged in selling self-propelled combines and four-wheel-drive tractors to transfer to MCC and become employees of the new corporation. M-F maintained for its employees and retired employees a number of benefits, including basic health, major medical, life insurance, vision care, hearing care, and dental benefits. These benefits were described in an "employee welfare benefit plan" within the meaning of 29 U.S.C. Sec. 1002(1) and (3). (The term "welfare benefits" is used in contradistinction to "pension benefits." No issue regarding pension benefits is raised on this appeal. All claims concerning pension benefits have been settled.) M-F's welfare-benefit plan is still in existence, but the plaintiffs, in the view of defendants, are no longer members of it, because, as we shall shortly see, they were transferred from M-F to MCC under circumstances that have given rise to this case.
 
 
 5
 Employees who had already retired from M-F (ten of whom are individually named plaintiffs) were simply transferred to MCC. They were not asked to agree to this transfer, nor were they even aware of it at the time it occurred. M-F and Varity simply purported to substitute the new entity, MCC, as the party obligated to provide welfare benefits to employees in the transferred product lines who had previously retired from M-F. Current employees of M-F, however, were asked to consent, and did consent, to leaving M-F and signing up with MCC. In order to obtain this consent, M-F and Varity made various representations to the M-F employees in question. They told the employees, among other things, that the new company had a bright future, and that the "financial restructuring [that] created Massey Combines Corporation ... will provide the funds necessary to ensure its future viability." Charles Howe et al. v. Varity Corp. et al., No. 4-88-CV-1598, p. 21 (S.D.Iowa, Findings of Fact and Conclusions of Law filed March 26, 1993), quoting the transcript of the video shown to the M-F employees made by an officer of Varity who became president and chief executive officer of MCC.
 
 
 6
 The District Court's findings about what the employees were told continue, describing a sheet distributed by management:
 
 
 7
 64. The question and answer sheet ("Q & A sheet") in Exhibits A and B contained eight questions and answers. Defendants developed these questions and answers in anticipation of the "many concerns" by the employees. Defendants purposefully made the questions and answers incomplete, confusing, evasive, and deceptive. Defendants developed more forthright questions and answers, but they opted not to publish them. (Exs. 42, 46, 47.)
 
 
 8
 65. Information in Exhibits A and B concerning benefits was very limited. That information included a side-by-side comparison showing that M-F's and MCC's benefits were identical. The only question dealing with benefits was number three. The answer simply stated that "benefit programs will remain unchanged." Defendants considered telling the employees that "initially" benefits would remain the same but that MCC would be reviewing the benefits and would notify the employees of any changes. Defendants rejected this disclosure because they believed it would cause the employees to reject the acceptance forms. Soon after the employees transferred to MCC, Varity began to develop "creative and innovative ways" to reduce employee benefits. (Ex. 67.)
 
 
 9
 66. Defendants did not include in the Q & A sheet certain questions that they knew the employees wanted answered. For example, the employees wanted to know whether they were eligible for termination pay from M-F. The employees also wanted to know if they could take early retirement from M-F. Defendants purposefully did not provide answers to these and other questions because they wanted the employees to transfer to MCC in order to avoid the liabilities associated with severance pay and retirement benefits. (Ex. 47.) Defendants' failures to make these disclosures were to the detriment of the Retired and Terminated Classes.
 
 
 10
 67. Defendants knew they should tell the employees that they claimed the right to amend or terminate benefits in retirement. [One Varity official wrote to another] on April 15, 1986, as follows:
 
 
 11
 The following proposal results because of the govt's and lenders insisting that in communicating with employees in the formation of MCC, that we are very explicit about maintaining our rights to modify benefits in the future, i.e., that there is no promise that the present benefits will be guaranteed forever. As a result we are faced with the awkward situation that the letter may not attract those employees who we would like to join MCC.
 
 
 12
 (Ex. 42.) Defendants ultimately decided to ignore the above set out proposal and not make the disclosure to the employees.
 
 
 13
 68. The representations made ... regarding the potential financial viability of MCC, MCC's business outlook, and the employee benefits were materially misleading. Defendants knew the representations were materially misleading when they were made. Plaintiffs relied on these representations to their detriment.
 
 
 14
 69. Project Sunshine was, as mentioned above, a scheme designed, in part, to rid defendants of the obligations to pay benefits to retirees and employees of M-F.
 
 
 15
 Id. at 22-24.
 
 
 16
 In fact, when MCC was formed, it was "essentially bankrupt...." Id. at 11. "The fair market value of the MCC common stock was zero or nominal. As of May 9, 1986, MCC had incurred on its books approximately $54 million in losses even though it had not been in operation. Inventory, receivables, and other assets that were transferred to MCC were overvalued by $46 million.... Similarly, MCC's liabilities, including unrecorded pension liabilities, were underestimated. In sum, MCC had a negative net worth on the day it was created (May 9, 1986), with liabilities exceeding assets by at least $46 million. MCC started on May 9, 1986, with only $15,000 cash. It immediately drew on a line of credit and began liquidating assets to generate cash. MCC had little or no chance of survival from its onset.... All of MCC's officers ... agreed that MCC's chances of survival were not good." Id. at 11-12.
 
 
 17
 It is no wonder, therefore, that Varity's chairman and chief executive officer bragged that he had "unloaded his losers all in one wagon" through Project Sunshine. Tr. 2652. This official also declared that "he was shifting several thousand retirees and their pension obligations into [MCC] and was delighted to be out from under all those obligations.... He also [said] that he got the lenders to agree to shove about $200 million worth of debt over into [MCC] off of [Varity]." Id. at 2652.
 
 
 18
 As expected by its principals, but not by the transferred employees, MCC failed. It went into receivership on March 4, 1988. As a result, employees of MCC stopped receiving welfare benefits. Retired employees of M-F who had been transferred without their knowledge to MCC learned for the first time of the transfer, and they also stopped receiving welfare benefits. People working for MCC at the time of its demise lost their jobs without severance pay.
 
 II.
 
 19
 Three groups of employees are plaintiffs in this case. Ten named individuals had already retired from M-F at the time MCC was created. They make up the first group. The other two groups are classes of employees: the Retired Class, made up of workers who transferred from M-F to MCC and retired before MCC failed, and the Terminated Class, made up of employees who were with MCC until the end and lost their jobs when it went into receivership. The Terminated Class claims wrongful deprivation of severance or termination pay. The individual plaintiffs and the Retired Class claim wrongful deprivation of welfare benefits.
 
 
 20
 This case was tried to a jury for 17 days.[2] The plaintiffs asserted five different theories of relief: (1) breach of contract, that is, failure to pay welfare benefits in accordance with the defendants' welfare-benefit plan, see 29 U.S.C. Sec. 1132(a)(1)(B); (2) estoppel; (3) breach of fiduciary duty in violation of 29 U.S.C. Sec. 1104(a); (4) fraudulent misrepresentation; and (5) interference with rights protected by the statute, in violation of 29 U.S.C. Sec. 1104. The jury returned verdicts for all three groups of plaintiffs under all five theories. It awarded the following amounts:
 
 
 21
 To the Retired Class, $7,600,000, including past-due benefits, as of the time of trial, of $696,195.
 
 
 22
 To the Terminated Class, $1,536,117, representing unpaid severance pay.
 
 
 23
 To the named individual plaintiffs, $712,332, including past-due benefits, as of the time of trial, of $82,812.
 
 
 24
 The jury also returned verdicts for punitive damages of $3 million against M-F and $33 million against Varity.
 
 
 25
 On post-trial motions filed by defendants, the District Court, in two comprehensive and painstaking opinions, set aside the jury's verdicts in part. It granted judgment as a matter of law in favor of defendants with respect to the claim of the Terminated Class. It set aside in their entirety the awards of punitive damages. As for the Retired Class, the District Court rejected as a matter of law the theories of breach of contract and fraudulent misrepresentation, the latter on the basis of preemption by ERISA. The Court upheld the jury's decision on the claims of interference with protected rights, estoppel, and breach of fiduciary duty. It then gave the winning plaintiffs a choice. They could either take the money awarded by the jury as compensatory damages--$7.6 million to the Retired Class and $712,332 to the individual plaintiffs--or they could elect the following alternative relief:
 
 
 26
 Payment to the Retired Class of $696,195 in past-due benefits
 
 
 27
 Payment to the individual plaintiffs of a total of $82,812 in past-due benefits
 
 
 28
 Reinstatement of the Retired Class and the individual plaintiffs as members of the M-F Welfare Benefits Plan as it existed on the dates of their retirement.
 
 
 29
 Retention of jurisdiction to decide details and incidents of relief, including payment of benefits accrued but not paid between the time of trial and the date of plaintiffs' reinstatement.
 
 
 30
 The plaintiffs elected to receive the sums awarded by the jury. Both sides have appealed.
 
 III.
 
 31
 We first address the issues raised in the plaintiffs' cross-appeal, No. 93-2111. The principal such issue is the propriety of the District Court's rejection of the claim of the Retired Class for breach of contract. (We use the phrase "breach of contract" as a kind of short-hand here. We do not mean a common-law claim for breach of contract, arising under state law. Such a claim is, no doubt, preempted by ERISA. We refer instead to a claim under ERISA itself, 29 U.S.C. Sec. 1132(a)(1)(B), brought by beneficiaries to recover benefits due under the Welfare Benefits Plan, to enforce their rights under the Plan, and to clarify their rights to future benefits under the Plan.)
 
 
 32
 The District Court rejected this claim on the basis of Section 7.4 of the Plan itself, which reads as follows:
 
 
 33
 The Company hereby reserves the right, by action of the Board, to amend or terminate the Plan or Trust at any time, provided no such amendment or termination shall have the effect of diverting the Trust funds to purposes other than the exclusive benefit of the Employees except as provided in Section 7.1. However, the right to amend or terminate the Plan shall not, in any way, affect an Employee's right to claim benefits, diminish, or eliminate any claims for benefits under the provisions of the Plan to which the Employee shall have become entitled prior to the exercise of the Company's right, through its Board, to terminate or amend.
 
 
 34
 This language unambiguously confers on the company the right to amend or terminate the Plan. It is fatal to the claim of the Retired Class that, once they had retired from M-F, their right to welfare benefits became vested for life. We so held in Howe v. Varity Corp., 896 F.2d 1107 (8th Cir.1990) (Howe I ), in which we reversed the District Court's grant of a preliminary injunction in favor of the Retired Class. That holding is the law of the case.
 
 
 35
 It is true that rulings on motions for preliminary injunction are sometimes tentative, in that they may be based on an incomplete factual record, or on a preliminary assessment of the equities of the case, including the likelihood of success on the merits. But, as we remarked in Howe I, "an appellate court reviewing the grant or denial of a preliminary injunction may also determine whether the district court based its decision on an erroneous legal premise." Id. at 1109 n. 3. In such a case, "[w]e ... may reach the legal issues at the heart of the case," ibid., and that is exactly what we did in Howe I. We squarely rejected plaintiffs' efforts to explain away Section 7.4. We also necessarily rejected plaintiffs' arguments based on a pamphlet called You & M-F. That pamphlet was before us on the prior appeal. These holdings were binding on the District Court on remand. We also, on this subsequent appeal, are obliged to follow them unless the law has changed, which it has not, or some clear and unmistakable miscarriage of justice will occur, which it will not. We affirm the District Court's ruling rejecting plaintiff retirees' breach-of-contract claim as a matter of law.
 
 
 36
 We also agree with the District Court's ruling as a matter of law for defendants against the Terminated Class. For many years, M-F paid severance pay to terminated employees under a policy contained in its Personnel Administration Manual (PAM). MCC continued the same policy, but when it went bankrupt, the receiver refused to pay any of the employees' severance pay. The Terminated Class contends that the PAM promises severance pay to any employees who are terminated for reasons beyond their control, which is certainly what happened to those persons who were employed by MCC at the time of its demise. However, the employees' right to severance pay is controlled by the language in the PAM. That manual expressly states:
 
 
 37
 The publication of the practice outlining conditions for payment and the schedule of allowance does not constitute a contractual relationship with the employee. The termination allowance procedure represents present company practice, administered at the Company's sole discretion which may be amended by the company without prior notice. (Emphasis added.) (App. 613.)
 
 
 38
 PAM Section 5.01(III)(B). The employees' attempt to recover MCC severance benefits from Varity[3] has no support in the language of the PAM. The relevant provision expressly states that it "does not constitute a contractual relationship with the employee." Therefore, Varity's refusal to pay severance benefits was consistent with the plain language of the plan, and the language does not create any reasonable expectation that terminated employees would be entitled to severance pay.
 
 
 39
 We also agree with the District Court's action in setting aside the jury's awards of punitive damages against M-F ($3 million) and Varity ($33 million). Only equitable relief, as opposed to damages, is available under ERISA, see Novak v. Andersen Corp., 962 F.2d 757 (8th Cir.1992), and punitive damages are not, by any stretch of the imagination, equitable relief. "Damages are damages, and an award of damages is a legal, not an equitable, remedy." Id. at 761.
 
 
 40
 On their cross-appeal, plaintiffs also challenge the District Court's rejection of their fraudulent-misrepresentation theory. The District Court held that "any claim for fraudulent misrepresentation is preempted by ERISA." Charles Howe et al. v. Varity Corp. et al., Civil No. 88-1598-E, p. 27 (S.D.Iowa, Order filed March 26, 1993). We have held that a state-law claim of fraudulent misrepresentation is preempted by ERISA. Consolidated Beef Industries, Inc. v. New York Life Ins. Co., 949 F.2d 960, 964 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). Acts of fraud may be relevant to an ERISA claim. They may even be actionable under ERISA, but if they are, it is because they violate the statute, not because they would be tortious under the common law of any state. Accordingly, the District Court was correct in rejecting a free-standing claim of fraudulent misrepresentation. Whatever fraud occurred must be analyzed in the context of the statute, and we shall do just that when we consider defendants' appeal, in the next part of this opinion.
 
 IV.
 
 41
 Defendants' appeal is No. 93-2056. At the outset, they contend that Howe I is a complete obstacle to any form of relief in favor of plaintiffs. Howe I, defendants say, held that plaintiffs had no right to benefits because of Section 7.4 of the Plan. We believe defendants read Howe I too broadly. We did hold, as previously explained, that plaintiffs had no right to relief for breach of contract based on the documentary evidence in the record at that time, including the Plan itself and the summary description of the Plan, the pamphlet You & M-F. We also held that because these documents were unambiguous on their face, it was not proper to rely on extrinsic evidence.
 
 
 42
 These statements, however, must be read in context. The type of extrinsic evidence we were referring to was not that defendants had fraudulently induced employees to transfer to MCC, but rather had to do with alleged past practices on the part of defendants, which practices, plaintiffs argued, had exempted retired employees from changes in the Plan. See 896 F.2d at 1110. Moreover, we observed that "[p]laintiffs have not argued estoppel, nor have they suggested any detrimental reliance on defendants' practices." Ibid. It seems clear to us, therefore, that Howe I cannot be read as foreclosing a theory of breach of fiduciary duty. Certainly plaintiffs are now arguing that such a breach occurred because of defendants' fraudulent misrepresentations and plaintiffs' detrimental reliance on them. We hold that Howe I does not bar plaintiffs from urging, on the present appeal, that they are entitled to relief on the basis of breach of fiduciary duty, estoppel, or interference with protected rights. Cf. 896 F.2d at 1110-11 (claim of breach of fiduciary duty with respect to benefits vesting after the 1986 transfer but before MCC went into receivership in 1988 must await "a more fully developed record and more carefully-considered factual findings than those before us.").
 
 
 43
 We turn to a discussion of the merits of plaintiffs' breach-of-fiduciary-duty claim. We have no doubt, and we do not understand defendants to dispute, that the conduct defendants engaged in, according to the findings of the District Court, was a breach of fiduciary duty in the generic sense. The statute, 29 U.S.C. Sec. 1104(a)(1), provides, among other things, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." As Judge Posner remarked with typical directness in Peoria Union Stockyards Co. v. Penn Mutual Life Ins. Co., 698 F.2d 320, 326 (7th Cir.1983): "Misrepresentations and omissions [are] breaches of ... fiduciary obligations. Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA, 29 U.S.C. Sec. 1104(a)(1)."
 
 
 44
 It is true that not every business decision made by a fiduciary will subject it to liability for breach of fiduciary duty, even though the decision may detrimentally affect the prosperity of the company, the assets of the plan, or the interests of plan beneficiaries. Defendants' decision to create MCC and to transfer certain assets to it, for example, was not by itself a violation of ERISA. It may have been unwise or bad business, but that is not the same thing as a breach of fiduciary duty. Plaintiffs' proof here, however, goes beyond mere business decisions on the part of defendants. "[M]isleading communications to plan participants regarding plan administration ... will support a claim for breach of fiduciary duty." Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1163 (6th Cir.1988). "[A] fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. Sec. 1104 are owed." Ibid. See also Rosen v. Hotel & Restaurant Employees & Bartenders Union, 637 F.2d 592, 600 n. 11 (3d Cir.) (holding a fiduciary is under a duty to communicate material facts to a plan beneficiary), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).
 
 
 45
 Indeed, in some instances a fiduciary's duty goes beyond merely refraining from making affirmative misrepresentations. A fiduciary can also have a duty to disclose, "a duty ... to advise [a beneficiary] of circumstances that threaten interests relevant to the relationship. For example, a fiduciary bears an affirmative duty to inform a beneficiary of the fiduciary's knowledge of prejudicial acts by an employer.... 'A beneficiary, about to plunge into a ruinous course of dealing, may be betrayed by silence as well as by the spoken word.' " Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 750-51 (D.C.Cir.1990) (Wald, C.J.), quoting Globe Woolen Co. v. Utica Gas & Electric Co., 224 N.Y. 483, 489, 121 N.E. 378, 380 (1918) (Cardozo, J.).
 
 
 46
 Defendants, however, insist--and this is their principal argument on appeal with respect to the breach-of-fiduciary-duty claim--that there is simply no right of action for such a breach on the part of individual beneficiaries for their own benefit. Any such right of action, they argue, exists only on behalf of the Plan itself and cannot inure to the benefit of individual participants, whatever defendants may have done. In order to evaluate this argument we look first to the words of the statute, specifically to Section 1132 of Title 29, the section that creates rights of action for violation of ERISA. Section 1132(a) reads in pertinent part as follows:
 
 
 47
 A civil action may be brought--
 
 
 48
 (1) by a participant or beneficiary--
 
 
 49
 (A) for the relief provided for in subsection (c) of this section, or
 
 
 50
 (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 
 
 51
 (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title;
 
 
 52
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
 
 
 53
 Defendants cite Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), but this case holds only that individual plan participants have no right of action for extra-contractual compensatory or punitive damages for breach of fiduciary duty (in that case, improper or untimely processing of benefit claims). (We take the phrase "extra-contractual damages" to mean damages other than the payment of benefits owed under a plan. In Russell all benefits owed had been paid; additional damages for the delay in payment, including mental distress, were at stake.) Russell involved only Section 502(a)(2) of the statute, 29 U.S.C. Sec. 1132(a)(2), quoted above, and plaintiff in Russell expressly disclaimed reliance on Section 502(a)(3), 29 U.S.C. Sec. 1132(a)(3).
 
 
 54
 In the present case, by contrast, it is precisely paragraph (3) on which plaintiffs rely. The plain language of the statute certainly favors their position: "A civil action may be brought ... by a participant [or] beneficiary ... to enjoin any [violation] ... of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief ... to redress such violations or ... to enforce ... this subchapter or the terms of the plan...." Here, participants and beneficiaries seek to enjoin their exclusion from the M-F Plan, an exclusion which they claim violates the fiduciary duties imposed by Section 1104, and they also seek other appropriate equitable relief to redress past violations of the same section. But for defendants' breach of fiduciary duty, plaintiffs say, they would never have transferred to MCC, they would have been employees of M-F when they retired, and they would still be receiving benefits under the M-F Plan, which has not been terminated. We agree with the reasoning in Justice Brennan's concurring opinion in Russell. In his view, ERISA was intended to incorporate the law of trusts, and "it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." 473 U.S. at 152-53, 105 S.Ct. at 3095-96 (Brennan, J., concurring in the judgment). Section 502(a)(3) is available to enforce these duties. It "authorizes the award of 'appropriate equitable relief' directly to a participant or beneficiary to 'redress' 'any act or practice which violates any provision of this title or the terms of the plan.' ... A beneficiary therefore may obtain 'appropriate equitable relief' whenever an administrator breaches the fiduciary duties set forth in section 404(a) [29 U.S.C. Sec. 1104(a) ]." Id. at 153-54, 105 S.Ct. at 3095-96 (Brennan, J., concurring in the judgment) (footnotes omitted and emphasis in original).
 
 
 55
 This Court has previously awarded individual relief to plan beneficiaries for a breach of fiduciary duty. Monson v. Century Mfg. Co., 739 F.2d 1293, 1303 (8th Cir.1984) (specifically referring to 29 U.S.C. Sec. 1104(a)(1)(B)). As defendants point out, Monson does not refer to any particular paragraph of Section 502(a), 29 U.S.C. Sec. 1132(a), and reliance on Section 502(a)(2), 29 U.S.C. Sec. 1132(a)(2), is now foreclosed by Russell. But Section 502(a)(3), 29 U.S.C. Sec. 1132(a)(3), remains available, for reasons explained above. The Seventh Circuit has recently so held, in a case involving not affirmative misrepresentations, but simply the failure to give a plan participant full and complete material information. Anweiler v. American Electric Power Service Corp., 3 F.3d 986, 993 (7th Cir.1993) ("An individual may seek equitable relief from a breach of fiduciary duty under section 1132(a)(3)").
 
 
 56
 Defendants cite Mertens v. Hewitt Associates, --- U.S. ----, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), but nothing in Mertens is inconsistent with the position taken here. Mertens simply holds that only "equitable relief" is available under Section 502(a)(3), 29 U.S.C. Sec. 1132(a)(3), and that this phrase does not include the collection of damages from persons who are not fiduciaries but act in concert with those who are fiduciaries. Nothing in Mertens precludes an award of traditional equitable relief, including an injunction, restitution, and the like. As plaintiffs now concede, Brief of Plaintiffs-Appellees p. 30, after Mertens, compensatory damages are not recoverable under Section 1132(a)(3). But the case by no means bars equitable relief for individual participants who have suffered a breach of trust. See also Novak v. Andersen Corp., 962 F.2d 757 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993), holding that compensatory damages are not available as "equitable relief" in a suit brought by a plan participant under Section 502(a)(3).
 
 
 57
 In sum, we reject defendants' submission that individual participants or beneficiaries injured by a breach of fiduciary duty have no right of action under Section 502(a)(3) for their own benefit. In reaching this conclusion, we follow the reasoning of the Seventh Circuit in Anweiler, supra, which was decided after Mertens. It is also not irrelevant that a contrary holding would leave unredressed an egregious wrong. As the District Court found,
 
 
 58
 Defendants' conduct in designing and implementing Project Sunshine was willful, wanton, malicious, and in bad faith vis-a-vis all plaintiffs.
 
 
 59
 * * * * * *
 
 
 60
 Project Sunshine was nothing more than a brilliant manipulative effort to sever retiree welfare obligations which had become a burdensome load on a financially strapped company. Project Sunshine was a sucker punch on loyal employees who had given a lifetime of service to a company.... ERISA was enacted to prevent just such a maneuver as was undertaken in Project Sunshine.
 
 
 61
 Charles Howe et al. v. Varity Corp. et al., No. 4-88-CV-1598, pp. 39, 80 (S.D.Iowa, Findings of Fact and Conclusions of Law filed March 26, 1993).
 
 
 62
 We hold that the District Court was correct in granting relief to the Retired Class for breach of fiduciary duty.[4]
 
 V.
 
 63
 The remaining claim, brought by individual employees who had already retired from M-F at the time of the creation of MCC, needs only brief discussion. As we have indicated, these employees were simply "transferred" to MCC without their knowledge or consent. They were given no explanation, they were not asked for permission, and they were not even informed of the "transfer" until MCC went into receivership. Such a complete disregard of the rights and interests of beneficiaries is a clear breach of fiduciary duty in violation of Section 1104(a)(1), and the named individual plaintiffs have a right of action for redress under Section 1132(a)(3). An obligor (here, M-F and Varity) cannot free itself of contractually created duties without the consent of the persons to whom it is obligated. Restatement (2d) of Contracts, Section 318(3), comment d. M-F and Varity cannot unilaterally relieve themselves of obligations to the individual retirees. Their attempt to do so is of no legal effect, and we uphold the District Court's ruling in favor of the ten named individual plaintiffs.[5]
 
 VI.
 
 64
 It remains to discuss the appropriate form of relief. In our view, under Mertens and Novak, the judgments for compensatory damages, $7.6 million to the Retired Class and $712,332 to the ten named individual plaintiffs, cannot stand. Such a judgment is legal relief, not equitable, and is not available under Section 502(a)(3). Rather, plaintiffs are entitled to receive the alternative form of relief offered to them by the District Court at the conclusion of its findings of fact and conclusions of law filed on March 26, 1993. The Retired Class should receive $696,195, an award in the nature of restitution to compensate them for benefits of which, at the time of trial, they had been deprived. The Retired Class should also receive restitution for benefits accrued between the time of trial and the entry of a final decree on remand. Finally, they are entitled to an injunction reinstating them as members of the M-F Welfare Benefits Plan under the terms of that plan as it existed at the time of retirement. Similarly, the named individual plaintiffs should receive as restitution the amounts set opposite each of their names on page 81 of the District Court's findings of fact and conclusions of law, totalling $81,812, plus an amount to compensate them for benefits accrued but not paid between the time of trial and the entry of a final decree on remand. In addition, they are entitled to an injunction reinstating them as members of the M-F Plan as of the time of their purported "transfer" to MCC.
 
 
 65
 In this way, the Retired Class and the individual plaintiffs will be restored to the position they would have occupied if the misrepresentations described in this opinion had never occurred. They will be members of the M-F Welfare Benefits Plan, which has not been terminated.
 
 
 66
 The relief awarded includes payments of money that plaintiffs would have received if they had remained members of the M-F Plan, but we do not think these payments can properly be characterized as "damages," and thus unavailable under Section 502(a)(3). Rather, we view the payments as restitution. Equity will treat that as done which ought to have been done. Or, to put it in words that fit the present case more precisely, equity will disregard that which ought not to have been done. Plaintiffs should never have been lured away from M-F into the financially shaky MCC. The payments we are ordering are exactly what plaintiffs would have gotten if they had remained at M-F. They are restored to their rightful position. This is restitution, and the Supreme Court in Mertens twice lists "restitution" as a type of equitable relief available under Section 502(a)(3). 113 S.Ct. at 2068, 2069. The statute itself mentions not only injunctions but also "other appropriate equitable relief (i) to redress ... violations" of ERISA. Section 502(a)(3)(B). Payments of past-due benefits are analogous to awards of back pay in Title VII cases, relief uniformly regarded as equitable. Cf. Mertens, --- U.S. at ----, 113 S.Ct. at 2068 (analogizing the remedies available under ERISA to those available under Title VII.)
 
 
 67
 * * *
 
 
 68
 The judgment of the District Court is affirmed, subject to the modification of relief described in this opinion. The cause is remanded to that Court with instructions to enter a final decree not inconsistent with this opinion. Plaintiffs are awarded their costs in this Court.
 
 
 69
 HANSEN, Circuit Judge, concurring in part and dissenting in part.
 
 
 70
 I concur in Parts I through V of the court's opinion. I respectfully dissent from Part VI. I do so for two major reasons.
 
 
 71
 First, the remedy that our court awards the individual plaintiffs and the retired class is the very relief which the district court offered to them as an "election of remedies" and which they specifically rejected. (See Findings of Fact and Conclusions of Law of Judge O'Brien at 80 (Mar. 26, 1993) (offer); Appellees' App. at 5 (election of remedies)). Because the plaintiffs elected to take a judgment for the $7.6 million and the $712,332 monetary damage awards awarded to them respectively by the jury, it is that judgment which was appealed, and it is that judgment (and not the rejected alternative remedy) upon which the briefs and argument focused our appellate attention. In short, the correctness and validity of the alternative relief now awarded has not been tested in our appellate crucible.
 
 
 72
 Second, when the district court offered the plaintiffs the sums of money which our court now awards as being "other appropriate equitable relief" under 29 U.S.C. Sec. 1132(a)(3) "in the nature of restitution" (ante. at 756), the district court very clearly determined those sums to be a "judgment for compensatory damages (actual expenses)" as to the individual plaintiffs, and to be a "judgment for compensatory damages ... in the amount of $696,195" for the retired class. (Findings of Fact and Conclusions of Law at 81.) In his fact-findings numbered 117 and 119, the district judge characterized the same amounts as "the value of past benefits lost." (Id. at 41.) In Novak v. Anderson Corp., 962 F.2d 757, 759 (8th Cir.1992), we noted that funds to which a beneficiary was entitled under an ERISA plan (amounts which we then called "contractual damages") were not recoverable as an equitable remedy. Instead we deemed them recoverable as a legal remedy under a different ERISA provision. We said: "ERISA also provides a legal remedy, which allows a beneficiary to recover monetary damages for benefits owed under the plan." Id.
 
 
 73
 "Past benefits lost" (the district court's factual characterization) are, in my view, the same as "monetary damages for benefits owed under the plan", and under Novak are legal and not equitable relief. "Damages are damages, and an award of damages is a legal, not an equitable remedy." Novak, 962 F.2d at 761. A review of the transcript of the testimony of the individual plaintiffs reveals that more than the value of the benefits they lost under the plan has been included in the amounts the court now awards as restitution. In fact, included in the awarded individual amounts are sums that the individual plaintiffs expended as premiums for replacement health insurance policies when their plan provided benefits ceased. I have great difficulty in seeing those sums as "restitution." To me they are traditional consequential legal damages and unrecoverable under Sec. 1132(a)(3). Indeed, as the court points out (ante. at 756), the plaintiffs themselves now concede that after Mertens v. Hewitt Assoc., --- U.S. ----, 113 S.Ct. 2063 (1993), compensatory damages are not recoverable under Sec. 1132(a)(3). The district court clearly called these amounts "compensatory damages." In my view our court has taken what the trial court determined were "compensatory damages" and which we said two years ago in Novak were a legal and not an equitable remedy, and has fashioned equitable relief by calling it all by another name, i.e., in the nature of restitution. Thus I decline to join in Part VI of the court's opinion. Instead, I would remand this case to the district court for the crafting of appropriate equitable relief.
 
 
 74
 Accordingly, I respectfully dissent.
 
 
 
 *
 The Hon. Donald J. Stohr, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Hon. Donald E. O'Brien, Senior United States District Judge for the Northern and Southern Districts of Iowa
 
 
 [2]
 In In re Vorpahl, 695 F.2d 318 (8th Cir.1982), we held that suits under 29 U.S.C. Sec. 1132 to recover present or future benefits under ERISA are equitable in nature, and that there is no right to trial by jury. Accord, Kirk v. Provident Life & Acc. Ins. Co., 942 F.2d 504, 506 (8th Cir.1991). No harm has been done by submitting this case to a jury, however, because the District Court has prudently made its own findings of fact. We thus have before us for review a judgment based on findings by the appropriate trier of fact
 
 
 [3]
 Defendants agree, for purposes of this appeal, that Varity and M-F are alter egos of MCC. Thus, if MCC owes severance pay, Varity and M-F would be liable for it
 
 
 [4]
 M-F and Varity do not deny that they are fiduciaries for purposes of the statute
 
 
 [5]
 Because we are upholding the claim for breach of fiduciary duty on behalf of both the Retired Class and the individual named plaintiffs, it is not necessary for us to discuss the alternative bases of relief, estoppel and interference with protected rights