55 F.3d 399
 Pens. Plan Guide P 23910Q
G. Bruce WILSON; Marco L. Gilliam; William H. Jones;
Robert E. McVey; Jerry Mooneyham; Edwin R. Acheson; J.
Marlene Adams; Betty E. Aldridge; Barbara Alexander; Jo
Ann Altschul; Virginia S. Amyx; Brenda J. Andrews; Sandra
K. Anglin; Islo D. Ashmore; Jerry L. Atwood; James D.
Bailey; Jimmie F. Bailey; Margaret A. Bailey; Patsy R.
Bailey; Jerry F. Baker; John C. Baker; Katherine Baker;
Sue A. Barber; William E. Barnes; Joan R. Barnett; James
C. Barr; William R. Baum; Betty L. Bays; Rosa Beal;
Louis D. Bellard; Rose Marie Bennett; James W. Benton;
Dorothy E. Bergmann; Herschel W. Biggs; Lon L. Black;
John S. Blackford; Peggy N. Blaksley; Jo Blanset; Joyce
E. Bohnert; Elizabeth A. Bond; William Thomas Boothe;
Peggy L. Bowen; Terry L. Bowles; B. Ann Bradfield; Donald
E. Braun; Leo Brian; Jarold L. Brookshire; Donna L.
Brown; Betty L. Browning; C.A. Browning; E. Jean
Browning; Sandra Brownlow; Jack W. Burgess; William T.
Burke; Martin E. Burlingame; Janice U. Burns; Louise T.
Busse; William S. Butler, Jr.; Raymond C. Caldwell; Irma
M. Cannas; Mona L. Caradine; Merlene Carlson; Roger
Carnaghi; Joyce Carter; Harrell J. Cathey; Audrey Janet
Chadwick; Jary A. Christy; Joan M. Christy; Diana M.
Cisneros-Gonzalez; Clifton L. Clark; Karen Clay-Sandifer;
Ted Clemmons; Evelyn Clifton; Nina A. Coleman; Hazel D.
Collvins; Kelly D. Colwell; Gonzalo L. Cortinas; Loretta
Cotter; Ronald C. Cotter; Phyllis Cottrell; Patrick E.
Creswell; Barbara A. Crookshank; Gary M. Cross; Rojean
Cull; Donna L. Cummings; Betty Daily; Lloyd A. Dalton;
Jean M. Daniel; Carl I. Davis; Carroll A. Davis; Margie
Davis; Zane Davis; Lavonne L. Deck; Amanda C. Deicke;
Joan M. Deimeke; Harold R. Delaney; Bobby L. Dell; Donald
R. Dennis; Barbara I. Desanto; Maria M. Diaz; Carl Edward
Dinkins; Patsy R. Dixon; Jack E. Dobbs; Patsy J.
Doolen-Drusch; Eugene W. Dooley; Phyllis A. Dooley; C.M.
Dorries; Johnie J. Dowling; Patrick A. Drayton; Neysa
Joan Dreesen; William R. Dunbar; James R. Duncan; Burnie
Joe Dunn; Dorothy E. Dziadek; James F. Easterling; Thomas
Q. Ebanues; Richard L. Ebrey; Emma Jean Edsall; W.H.
Eldridge; Chloe A. Elliott; James L. Elswick; G.K. Evans;
Virgil T. Faith; Nayda D. Farkas; Robert J. Farkas;
Louis A. Faust, Jr.; Ronay C. Ferber; Ada Blaine Ferrell;
Joe A. Ferrill; Gloria Joyce Fiala; Eugene F. Fischer;
Grover M. Fisher; Gerald D. Fournier; Charles S. Fowler;
Georgie M. Gardiner; Glenda Garison; Lloyd G. Giebler;
Kenneth R. Givan; Bobby D. Glover; Gene G. Godsy; Edith
Hope Hill Graham; Woodrow E. Grayson, Jr.; Glendel M.
Greer; Shirley J. Griffith; Dale R. Griffy; Oscar C.
Hairell; Alton M. Hall; Adalbert A. Hammes; James A.
Handloser; Donna G. Harmon; Edna J. Harmon; Martha P.
Harper; William E. Harper; A. Sue Harris; Lloyd E.
Harris; Mary V. Harris; Carolee Harshfield; Linda B.
Haught; Odis G. Hanes; Kenneth J. Heflin; Sue
Hendricks-Cathey; Harold Henning; Charles E. Hensel;
Linda Sue Hill; Virgina Hill; Millard David
Hinchman; Maynard T. Hoffman; Sam E. Hogan; Leonard
Hollinger; E. Charlene Hollingsworth; Carol A. Holmes;
Sandra Hoppe; Meredith A. Housel; Shirley J.
Howard-Henzlik; R. Charles Hubert; L. Earl Hughes; Edward
E. Huling, Jr.; Harlene Hungerford; Winford Hurd; Fred L.
Imhoff; John W. Jackson; Melba J. Jacobus; Wanda J.
Jefferson; Norman W. Jennings; Benjamin R. Johnson;
Evelyn K. Johnson; Mary Johnson; Richard L. Johnson;
Shirley D. Johnson; Curtis B. Johnston; Wallace E.
Johnston; N. Anne Joines; Charles D. Jones; Valda M.
Jones; Kenneth J. Joplin; Kenneth E. Kellogg; Jack L.
Kemper; Joanne Kerns; D. Jack King; Patricia King; Jack
W. Kirkwood; B. Joanne Knight-Gebhart; Mabel E. Knippa;
Patricia J. Konert; M. Claudia Kress; Victor M. Kroenke;
Tommy C. Lair; Helen L. Lamkins; Patricia A. Landsberger;
Walter E. Larson; Joyce E. Lewis; Thelma F. Lewis;
Patricia A. Linn; Herbert Glenn Lowry; Patricia M. Lumby;
Willie R. Lynch; Evelyn P. Madison; Bernard J. Mandl;
Mary Lou Marcy-Osborn; David J. Marmonti; Robert R.
Marshall; Phillipa D. Matthews; Allen L. McCann; Marcia
McClinton; Albert J. McCoy; Marian B. McCray; John O.
McGuire; Reuben H. McKenzie; Clifford R. McKiddy; Robert
E. McNamara; Arthur Wood McNaughton; Norman E. McNiel;
Doris A. Metz; Theresa A. Meyer; William L. Meyer; Helen
L. Miller; Robert L. Miller; Janice M. Minger; M.J.
Minihan; Ramona A. Mirt; Philip E. Moffitt; Bernice E.
Mohesky; Jeanette D. Moon; Carl Moore; Anthony C. Morgan;
Lavoice Morgan; Betty Morris; Doris D. Moss; Mary
Murphree; Roy B. Neal; Barbara G. Nelle; Kenneth W.
Nelson; Roy J. Newmann; Donna L. Nusser; Alice V.
O'Bleness; Doris E. Olson; Johnnie G. O'Neal; Fred E.
Owen; Renata A. Parker; Monte B. Paschall; Lawrence A.
Payne; Marcia L. Payne; Patricia E. Payton; John G.
Pearn; James O. Perkins; John T. Perkins; Ruth L.
Perryman; Christian R. Peter; Joe V. Pike, Jr.; Phillip
A. Pitzer; Charles L. Plank; Edna F. Poettgen; Donny B.
Pohl; Robert L. Poole; Samuel J. Potter; John T. Powell;
Carol M. Powers; Roger D. Prelesnik; Norman A. Pullen;
Barbara Purser; Robert L. Pursur; Shirley Y. Rahn; Cecil
Marie Ramsey; N. Jeanne Ramsey; Sammy J. Ramsey; Hughwill
Rapier; Guynell Read; Allan F. Reinartz; A. Melvin
Reynolds; Richard D. Reynolds; Eva Nell Rhodes; Ethyl B.
Riggs; Lewis C. Riley; Darlene Rittel; Ivan Roach;
Loretta Roberts; John H. Robinson; Robert E. Robinson;
John W. Roetzer; Mary Evelyn Rogers; Mable V. Rushing;
William A. Rutledge; Marian R. Salsbury; Jesse Wayne
Sanders; Kenneth J. Sapp; Marjorie L. Schaeffer; Donna D.
Schreimann; Don Schuette; John J. Schwartz; Charlotte
Schwoerke; Loraine A. Segraves; Jackie L. Sellers; Theron
W. Shaw; Wayne O. Sheets; Barbara A. Shellenberg; Jean
Shelton; Robert L. Shelton; A. Carlene Shipley; Billie D.
Simler; Betty Skipworth; Blanche M. Smith; Gary A. Smith;
Gordon S. Smith; Keith F. Smothers; Saudra N. Songer;
Carole A. Spangler; R.H. Spencer; Joseph D. Spillers;
Norma Jean Stalcup; Helen I. Steele; Karen K. Steele;
Doris M. Stegman; Milton L. Steiner; Stephanie C.
Stephens; Shirley Strnard; Carolyn E. Strong; John T.
Summers; Luther Hugh Summers; Nora Summers; Estha L.
Talley; Buddy W. Taylor; Herbert O. Taylor; Charlotte
Techlin-Hortmann; John O. Thies; Glenda S. Tidwell;
Patricia Tidwell; Thelma Timpson; Samuel Tinner; Shirley
N. Toon; Bill D. Turman; Eugene B. Turner; Marlene M.
Turner; Bernard G. Turney; Frank C. Vana; Marlene K.
Vanscyoc; Alvis D. Vest; Daniel C. Viehmann; O. Eugene
Vignery; David L. Wade-Meyer, Sr.; Marcella A. Wagener;
Joseph G. Waggoner, Jr.; Fern Waitschies; Robert G.
Walker; Carroll D. Walls; Robert E. Walls; Barbara A.
Ward; John R. Warren; Rex I. Warrick; F. Dean Wasem;
Glenda Lee Weaver; Leonard F. Weber; James J. Weidlich;
Freda E. Welch; Roy D. Welch; Harold M. Wellborn; Gerald
C. Wentzel; Billie S. West; Joe P. Westervelt; Judy D.
Whisler; Phillip D. White; Georgia Wiar; Lloyd D.
Wilburn; Constance Williams; Johnnie Williams; Mary E.
Wilson; William E. Wilson, Jr.; Ben J. Woods; Norman
Buford Word; Gerald Lee Worley; John R. Wrap; Irene
Wyatt; Norbert F. Youngers; Dolores M. Zajac; Doris A.
Metz; Dolores M. Siggs; Willa Ann Nunn; Darlene A.
Claypool; Joan E. Harris; Curtis H. Ingle; Patsy A.
Rowland; Marah Lavvorn; Janet K. Ferguson,
Appellants/Cross-Appellees,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, a Missouri corporation;
SBC Communications, Inc., a Delaware corporation, formerly
known as Southwestern Bell Corporation; Southwestern Bell
Corporation Management Pension Plan; Robert A. Dickemper,
Appellees/Cross-Appellants.
 Nos. 94-3720 and 94-3779.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1995.
Decided May 19, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied in No.
94-3720 July 6, 1995.*
 
 David G. Dempsey, St. Louis, MO, argued (Leonard Cervantes, on the brief), for appellants.
 Christian Andre Bourgeacq, St. Louis, MO, argued for appellees.
 Before RICHARD S. ARNOLD, Chief Circuit Judge, MURPHY, Circuit Judge, and DAVIS,* District Judge.
 DIANA E. MURPHY, Circuit Judge.
 
 
 1
 Appellants, former management employees of Southwestern Bell Telephone Company (SWBT) who accepted the terms of a severance incentive plan offered in 1990, filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et. seq., claiming that SWBT; its parent company, SBC Communications; and its Vice President of Human Resources, Robert A. Dickemper, breached their fiduciary duties and violated ERISA's disclosure requirements by misleading and failing to inform employees in 1990 about the possibility that future severance plans would be offered. After bifurcating the issues, the district court[1] denied the motion of the former employees for partial summary judgment and granted summary judgment in favor of SWBT, SBC, Dickemper and the Southwestern Bell Corporation Management Pension Plan.[2] Appellants contend they were entitled to a determination in their favor on liability and urge a remand for consideration of their reliance and damages. We affirm.[3]I.
 
 
 2
 In early 1990, SWBT determined that business conditions required that it reduce its management work force. In October 1990, after considering several possible approaches, SWBT decided to offer to its management employees the Management Force Adjustment Plan (MFAP), a cash-based severance incentive plan. The MFAP offered employees up to a year's salary as a cash incentive for early retirement, along with their regular pension and other benefits. The plan was announced to employees in an October 19, 1990 letter that was prepared by Dickemper and his staff. On October 26, 1990, the company distributed a "Summary of the Management Force Adjustment Plan of Southwestern Bell Telephone Company" (MFAP Summary), which was also prepared by Dickemper and his staff. The MFAP Summary contained a section of questions and answers about the plan, including a question related to future incentive programs:
 
 
 3
 Q: Isn't this just the first offer you're planning? Won't you be rolling out additional incentives in 1991?
 
 The answer stated:
 
 4
 A: We plan no additional incentive programs in the foreseeable future.
 
 
 5
 Rumors spread among employees that additional incentives would be offered in future years. In response, Dickemper and his staff prepared a letter that was sent to management employees on November 13, 1990, indicating that SWBT "absolutely will not enrich the plan, nor will we extend it past year end." In addition, it stated:
 
 
 6
 What about the future? Can we expect more management force reductions down the road? The answer is simple:
 
 
 7
 not if we do a good job growing our business. To do that, we have to keep our costs in check, and we have to learn how to generate more revenues without increasing the management force. The Management Force Adjustment Plan is a step in this direction.
 
 
 8
 Eventually, about 1,100 management employees, including appellants, accepted the MFAP and left SWBT's payroll on or before December 31, 1990.
 
 
 9
 In 1991, SWBT determined that further reductions in its management workforce were necessary due to business conditions. On September 30, 1991, it announced a new pension enhancement severance plan for managers called the Enhanced Management Plan (EMP). Under the terms of the EMP, five years were added to an employee's age and years of service for pension calculations, and pension benefits were increased by fifteen percent for five years. Approximately 3,700 managers took early retirement under the EMP and left the payroll by the end of 1991.
 
 
 10
 After the EMP was offered, appellants sued to obtain the enhanced benefits offered by the EMP. They claim that the appellees breached their duties as ERISA fiduciaries by representing that a decision had been made not to offer additional incentive programs in the foreseeable future and by failing to inform them of facts relevant to whether a future program would be likely. They also claim appellees violated statutory disclosure requirements, including Sec. 102(A)(1) of ERISA, 29 U.S.C. Sec. 1022(a)(1), which requires that Summary Plan Descriptions (SPDs) be accurate, comprehensive, and "written in a manner calculated to be understood by the average plan participant," and a Department of Labor regulation, 29 C.F.R. Sec. 2520.102-2(b), which regulates the format of SPDs. It is their position that but for representations that there would be no future severance programs, they would have continued at SWBT and would therefore have become eligible to retire with the enhanced benefits available in the EMP. Appellees respond that the employees lacked standing to bring this action under ERISA, that their representations in 1990 about possible future programs were truthful, and that the EMP was not under serious consideration at the time the MFAP was offered.
 
 
 11
 The district court ruled that the former employees had standing to sue but that they had failed to produce sufficient evidence of liability. It found that the record contained "no evidence that the management of SWBT misrepresented or omitted information relating to a future offering when they extended the MFAP offer in 1990." It stated that the decision to adopt the EMP was based on "unforeseeable events" in 1991 and noted that "[p]laintiffs are unable to identify any evidence which would suggest that management foresaw such circumstances and were aware of an impending second reduction in force when they offered MFAP." It also stated:
 
 
 12
 Even were fiduciaries held to a higher level of informational disclosure in such a case as this, the Court can still find no basis for liability. The questionnaire distributed along with MFAP was clear in its answers and demonstrates no intent to deceive, mislead or otherwise deprive employees of information available to management at that time. The summary plan was informational, not coercive, in its presentation of MFAP. The result was the voluntary registration of employees to accept the benefits offered therein.
 
 
 13
 The former employees claim on appeal that the district court erred in granting summary judgment to appellees and argue that partial summary judgment on the issue of liability should instead be entered in their favor.
 
 II.
 
 14
 Summary judgment is appropriate if there is no genuine issue of material fact and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c). All evidence and inferences must be viewed in the light most favorable to the non-moving party. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The non-moving party, however, must make a sufficient showing on "every essential element of [its] case for which [it has] the burden of proof at trial." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir.1993). We review the district court's decision de novo.
 
 
 15
 An ERISA fiduciary has a duty to avoid making material misrepresentations to plan beneficiaries, and individual plan beneficiaries have a right of action under ERISA to claim equitable relief for a breach of that duty. Howe v. Varity Corp., 36 F.3d 746 (8th Cir.1994), cert. granted, --- U.S. ----, 115 S.Ct. 1792, 131 L.Ed.2d 720 (U.S.1995). Plan fiduciaries are not obligated under ERISA to provide information to potential plan beneficiaries about possible future offerings. See Berlin v. Michigan Bell Telephone 858 F.2d 1154, 1164 (6th Cir.1988). If a fiduciary chooses to provide such information about the future, however, it has a duty not to make misrepresentations about any future offering. A statement to employees that future incentive programs are not planned can be a misrepresentation if serious consideration has been given to implementing a future program. Id. at 1163-64. If a fiduciary has not seriously considered implementing a future program, its statement that a future program is not planned as of that date does not turn into a misrepresentation if new plans develop in the future. See id. at 1164 ("there can be no misrepresentations about a future offering until that point in time ... when serious consideration has been given by the plan administrator and/or plan fiduciary concerning the implementation of the plan"). The determination when serious consideration began is a question of fact. Id.
 
 
 16
 Appellants claim that SWBT, SBC and Dickemper affirmatively misled employees through statements in the MFAP Summary and in other communications. Nothing in the record before this court reveals that the representations made to employees about potential future plans were false at the time made.[4] The statements cannot be considered misrepresentations absent evidence that SWBT, SBC, or Dickemper were seriously considering offering additional plans in the future. Mere suspicion about what may have been in the back of their minds is not enough to withstand summary judgment in favor of appellees. Appellants do not assert that questions of material fact exist as to when serious consideration to another plan was given. Although there may be some question as to when in 1991 the EMP was first seriously considered, there is no dispute that this consideration occurred in 1991, after the MFAP was offered. The November 13, 1990 letter specifically addressed whether there might be a future incentive plan and answered "not if we do a good job growing our business. To do that, we have to keep our costs in check, and we have to learn how to generate more revenues...." This put the reader on notice that future plans could be affected by financial performance.
 
 
 17
 Appellants complain that appellees failed to disclose information about SWBT's business condition, from which employees could have inferred that a future program might be likely. The asserted omissions include general information about SWBT's business plans, the effect of new rate structures on 1991 revenues, and national economic forecasts for 1991. In certain cases, a fiduciary may have a duty to disclose "circumstances that threaten interests relevant to the relationship," in order to avoid creating a misrepresentation. See Howe, 36 F.3d at 754. As with affirmative misrepresentations, however, a failure to disclose information about a future offering cannot be a misrepresentation unless serious consideration has been given to implementing it. See Berlin, 858 F.2d at 1164. Employer fiduciaries are not required to provide general business information to potential plan participants, and fiduciaries do not violate their duties by failing to disclose such information. See Payonk v. HMW Indus., Inc., 883 F.2d 221, 226 (3d Cir.1989) (fiduciaries not required to disclose status of business, as opposed to fiduciary, activities).
 
 
 18
 Appellants also argue that the district court required a showing of intent to deceive even though claims for negligent misrepresentation are actionable. They cite several cases regarding claims for breach of fiduciary duty for negligent misrepresentation. See, e.g., Berlin, 858 F.2d at 1164. Appellees respond that a misrepresentation must be intentional to be actionable. It does not appear that the district court required proof of intent on the misrepresentation claim, but in any event appellants did not meet their burden of showing misrepresentation, either intentional or negligent.
 
 
 19
 Appellants also claim that the representations made in 1990 violated ERISA's disclosure provisions governing summary plan descriptions.[5] They assert that the district court incorrectly required proof that SWBT intended to deceive them, because ERISA's disclosure provisions require a "subjective" standard for review, that is an examination of the "effect on the average plan participant." They rely on the statutory disclosure provisions for SPDs, which provide in part that:
 
 
 20
 The summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.
 
 
 21
 29 U.S.C. Sec. 1022(a)(1). They also cite 29 C.F.R. Sec. 2520.102-2(b), which regulates the general format of summary plan descriptions:
 
 
 22
 The format of the summary plan description must not have the effect to [sic] misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception[s], limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations....
 
 
 23
 Appellants assert that they are entitled to relief if the representations in the MFAP Summary, which is a SPD, had the effect of misleading or failing to inform the average plan participant. They claim that the statute and regulation were violated because the MFAP Summary and the related correspondence had the effect of making the average plan participant believe that the 1990 offer was final and that SWBT had decided not to offer an additional program in 1991.
 
 
 24
 Appellants read too much into the cited provisions. Both the statute and the regulation are more narrow than they argue. They apply only to statements made in a plan's SPD, not to other correspondence. The statute essentially requires SPDs to be complete, but not overly technical. There is no claim in this case that information specifically required by these provisions was omitted from the MFAP Summary or that it did not apprise them of their rights and obligations under the MFAP. Appellants claim to have been misled by the statement that SWBT had no plans to offer additional programs in the future. Even assuming that such a statement is covered by the statutory provision, it merely requires that it be "written in a manner calculated to be understood by the average plan participant." This appears to be an objective standard rather than requiring an inquiry into the subjective perception of the individual participants. Moreover, appellants have not shown that the statement in the SPD was written to be deceptive or to manipulate the truth. It did not contain confusing or technical terms, but used familiar language and format. While it may have been framed in somewhat imprecise language, it has not been shown to have violated the statute.
 
 
 25
 The regulation is even more narrow. Essentially, it prohibits the use of formatting options, such as type face or size and captions, to obscure disadvantages or highlight advantages of a plan. See 29 C.F.R. Sec. 2520.102-2(b). It does not address the content of SPDs. Moreover, if read as a whole, it seems limited to descriptions of the plan's benefits. Appellants do not claim to have been deceived by hidden or de-emphasized provisions in the MFAP Summary or by lack of clarity about the benefits available to them under the MFAP. Nothing in the record suggests that the format of the statement about future plans violated the regulation.
 
 
 26
 After careful review, we agree with the district court that appellants did not make a sufficient showing on their claims of breach of fiduciary duty or violation of statutory disclosure requirements to withstand the motion of their adversaries for summary judgment. The judgment of the district court is therefore affirmed.
 
 
 
 *
 Beam, Circuit Judge, took no part in the consideration or decision of this case
 
 
 *
 The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri
 
 
 [2]
 The pension plan was also named as a defendant, but the complaint does not allege specific claims against it
 
 
 [3]
 Appellees filed a cross-appeal from that portion of the district court's order holding that the plaintiffs had standing to bring this action, from its denial of their motion to strike certain records, and to assert other matters that were presented in their motion for summary judgment. Appellants then moved to dismiss the cross-appeal, arguing that the victors below do not have standing to appeal
 The argument that appellants lack standing to sue under ERISA is a jurisdictional issue that could have been raised in direct response to the appeal. Appellees contend that the former employees are not "participants" or "beneficiaries" in the EMP plan, as required by ERISA's civil enforcement provisions, 29 U.S.C. Sec. 1132(a). A "participant" or "beneficiary" is defined as someone "who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. Sec. 1002(7), (8). Employees who are technically not participants or beneficiaries in a plan may have standing if, "but for the employer's conduct alleged to be in violation of ERISA," the employees would have been plan participants. See Adamson v. Armco, 44 F.3d 650, 654 (8th Cir.1995); Howe v. Varity Corp., 36 F.3d 746 (8th Cir.1994), cert. granted, --- U.S. ----, 115 S.Ct. 1792, 131 L.Ed.2d 720 (U.S.1995).
 Because of the court's determination on the merits of the appeal, it is not necessary to discuss other issues raised by the cross-appeal or the motion to dismiss it. Both are dismissed as moot.
 
 
 [4]
 Appellants believe SWBT's answer to a question in the SPD indicated to them that a decision not to offer a program in 1991 had been made. SWBT's answer that "We plan no additional programs in the foreseeable future," does not say what appellants urge, however
 
 
 [5]
 Appellees argue that there is no individual cause of action available for a violation of ERISA disclosure provisions. If a plan fiduciary fails to follow the statute or a regulation, and that failure involves a material misrepresentation relied on by plan participants, an action might be available for equitable relief. See Howe, 36 F.3d at 755. Since appellants have not made such a showing here, we need not pause to consider this possibility further