SKOGQUIST TRUCKING AND EXCAVATING INC.; Darrell Nelson d/b/a D & N Trucking; and D & N Trucking, Inc., Plaintiffs,

v.

MINNESOTA WORKERS' COMPENSATION ASSIGNED RISK PLAN, Defendant.

WALTERS RUBBISH, INC., Plaintiffs,

v.

MINNESOTA WORKERS' COMPENSATION ASSIGNED RISK PLAN, Defendant.

Civ. Nos. 3–94–1270, 3–94–1271.

United States District Court,
D. Minnesota,
Third Division.

July 17, 1995.

Jerome A. Miranowski and Laurel A. Graham–Burke, Oppenheimer Wolff & Donnelly, Minneapolis, Minnesota and Margie R. Bodas, Lommen, Nelson, Cole & Stageberg, Minneapolis, Minnesota for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiffs Skogquist Trucking and Excavating, Inc. ("Skogquist"), Darrell Nelson d/b/a D & N Trucking, Inc. ("D & N"), and Walters Rubbish, Inc. ("Walters") (collectively "Plaintiffs") commenced these actions against Defendant Minnesota Workers' Compensation Assigned Risk Plan ("ARP") seeking, *inter alia,* a declaratory judgment that the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001–1461, preempts Minnesota Statutes sections 176 and 79A and that they accordingly are not liable for insurance premiums assessed against them by ARP. In response, ARP filed counterclaims alleging the Plaintiffs breached their workers' compensation insurance policy agreements by failing to pay mandatory premiums. This Court has jurisdiction over Plaintiffs' claims and ARP's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1367. This matter is currently before the Court on the parties' cross motions for summary judgment.

### Background

#### I. Parties

Plaintiff Skogquist is a Minnesota corporation engaged in the shipping business and is located in Princeton, Minnesota. Plaintiff D & N is a Minnesota sole proprietorship also engaged in the shipping business and is located in Elk River, Minnesota. Plaintiff Walters is a Minnesota corporation engaged in the business of collecting and disposing of garbage and refuse and is located in Blaine, Minnesota.

Defendant ARP is a workers' compensation insurance plan created by Minnesota Statutes section 79.251; ARP is administered by Park Glen National Insurance Company;

Michael A. Hatch, Hatch, Eiden & Pihlstrom, Minneapolis, Minnesota, for Plaintiffs.

ARP also has service contracts with Berkely Administrators and Wausau Insurance.

## II. Workers' Compensation under ARP

Minnesota created ARP in order to provide workers' compensation coverage to employers who are unable to obtain coverage from a licensed insurance company. Minn. Stat. § 79.251 (1994). Nearly one-half of all Minnesota employers, and the majority of Minnesota trucking companies, obtain workers' compensation insurance from ARP. (Sheehan Aff. ¶ 5.) The Minnesota Commissioner of Commerce monitors ARP and adopts the rules and procedures governing ARP's operations; ARP is not, however, a state agency. (Id. ¶ 6); Minn.Stat. § 79.251.

For each of its insureds, ARP assesses premiums for the insured's employees at the start of each policy period. (Sheehan Aff. ¶ 10.) These premiums are based upon the insured's estimated payroll. (Id.) At the end of each policy period, ARP audits its insureds and determines a premium based upon the actual amount of the payroll for each job classification. (Id.) If the estimated premium charged to the insured at the start of the policy period exceeded that which should have been charged, ARP refunds the insureds the amount overcharged. (Id.) If the estimated premium was too low, ARP assesses a deficiency against the insureds. (Id.)

## III. The Parties' Dispute

Plaintiffs purchased workers' compensation insurance from ARP. Although the

Plaintiffs leased their truck drivers from RNW Associates, Inc. ("RNW"), a Wisconsin corporation, they did not claim these drivers as employees at the time they applied for ARP insurance. They instead claimed they employed only clerical workers. (Sheehan Aff. ¶ 15.) As a result, ARP's servicing carriers considered only Plaintiffs' claimed clerical employees for purposes of determining the estimated premium charged to Plaintiffs at the beginning of each of their first policy periods. (Id.) At the end of the policy periods, ARP audited Plaintiffs, concluded the drivers provided pursuant to Plaintiffs' lease agreements with RNW were employees for the purposes of Minnesota's workers' compensation laws, and assessed premium delinquencies based upon coverage purportedly provided to each leased driver.[1]

Plaintiffs objected to ARP's assessment and claimed that, pursuant to their lease agreements, RNW and North American Indemnity Company[2] ("North American") provided the leased truck drivers with workers' compensation insurance.[3] Plaintiffs claimed their leased drivers were therefore not covered under ARP's policy. In response, ARP claimed the workers' compensation coverage provided by RNW and North American did not meet the requirements of Minnesota law, and that as a result, ARP was obligated to provide the Plaintiffs' drivers with coverage. It accordingly claims it is entitled to collect a premium on the drivers to cover its exposure for the drivers' workers' compensation claims. Plaintiffs refused to pay the assessment and commenced the present action

---

1. Based on the rates set by the Commerce Department, ARP assessed $146,215.00 to Skogquist for the period June 28, 1991 through June 28, 1992; $109,265.00 to D & N for the period July 13, 1991 through July 13, 1993; and $23,032.00 to Walters for the period July 13, 1992 through July 13, 1993. (Sheehan Aff. ¶¶ 12,17.)

2. North American is a "specialty" insurance carrier incorporated under the laws of Louisiana and licensed to do business in Arizona, Louisiana and New Mexico. (Hatch Third Aff., Ex. A.) North American is not authorized to do business in Minnesota. (Id.)

3. For the period July 13, 1991 through September 14, 1991, D & N contends the truck drivers it leased were covered by a workers' compensation

policy whereby RNW was named as an additional insured on a policy issued by North American; for the remainder of the period for which it held the ARP policy, D & N claims that the drivers were covered under an employee benefit plan established by RNW and authorized by ERISA. (Doc. No. 1270, Compl. ¶¶ 9–10.) Skogquist contends that for the period June 28, 1991 through September 14, 1991, the truck drivers it leased were covered by a similar North American Indemnity Company policy; for the remainder of the period for which it held the ARP policy, Skogquist claims that the drivers were covered under RNW's ERISA authorized plan. (Id. ¶¶ 11–12.) Walters does not claim its leased drivers were covered under the North American policy, and instead claims coverage was provided exclusively by RNW's ERISA plan.

claiming, *inter alia*, that the workers compensation laws upon which ARP predicated its claims are preempted by ERISA Section 514, 29 U.S.C. § 1144(a), and that Minnesota law did not require them to "double" insure the leased drivers. ARP filed a counterclaim alleging the Plaintiffs breached their insurance contract with it and seeking the assessed premiums.

On January 21, 1994, ARP moved for partial summary judgment on the issue of whether ERISA preempted Plaintiffs' claims. The Court[4] denied ARP's motion, concluding that the parties had not adequately addressed the legal issues pertinent to preemption and that "it [was] not clear whether ARP is the appropriate party to enforce the provisions of Minn.Stat. § 176.181." (Order dated Aug. 5, 1994 at 8, 9.) The parties subsequently filed the present cross motions for summary judgment.

### Discussion

#### I. Standard of Review

■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom

are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Kornblum v. St. Louis County*, 48 F.3d 1031, 1034 (8th Cir. 1995). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). Accordingly, the nonmovant "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Wilson v. Southwestern Bell Telephone Co.*, 55 F.3d 399, 405 (8th Cir.1995). However, the nonmovant is not obligated to prove in its favor an issue of material fact, *Unigroup v. O'Rourke Storage & Transfer*, 980 F.2d 1217, 1220 (8th Cir.1992), and a summary judgment motion should be denied unless the court is convinced that there is no evidence to sustain recovery in any circumstances, *Kornblum*, 48 F.3d at 1034.

■ Ordinarily, the court's task on a motion for summary judgment is not to weigh facts or evaluate the credibility of affidavits and other evidence. The nonmovant cannot, however, avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. *See Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992).

#### II. Analysis

The central dispute in this matter relates to Minnesota's workers' compensation insurance requirements. Minnesota requires all employers to provide workers' compensation coverage. Minn.Stat. § 176.181. ARP claims this coverage must be provided in the

---

**4.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

**1354**

manner set forth in section 176.181, subd. 2, which provides that employers shall (1) "insure payment of compensation with some insurance carrier authorized to insure workers' compensation liability in this state" or (2) "obtain a written order from the commissioner of commerce exempting the employer from insuring liability for compensation and permitting self-insurance of the liability."[5] *Id.* Plaintiffs' insurance did not satisfy either of these requirements: Neither North American nor RNW's ERISA plan is authorized to insure workers' compensation liability in Minnesota and Plaintiffs have not obtained a written order from Minnesota's Commissioner of Commerce authorizing self-insurance. (*See* Hatch Third Aff., Ex. A; Mathewson Dep. at 50–53, attach. to Burke Aff.) Although Plaintiffs have not complied with section 176.181, subd. 2, they claim this section is preempted by ERISA and, in the alternative, the coverage provided by North American or RNW's ERISA benefits plans is sufficient to satisfy Minnesota's workers' compensation laws notwithstanding the requirements set forth in section 176.181, subd. 2. Based on Plaintiffs' failure to comply with either (1) or (2), however, ARP assessed the aforementioned deficiencies.

There are presently two motions before the Court. ARP has moved for summary judgment seeking a determination that (1) Minnesota Statutes sections 176 and 79A are not preempted by ERISA, (2) Plaintiffs be considered "employers" of their leased truck drivers for the purposes of Minnesota Statutes section 176, and (3) Plaintiffs are liable to ARP for their overdue insurance premiums in the amounts alleged in its counterclaims. Alternatively, Plaintiffs have moved for summary judgment seeking a determination that (1) ARP is not the proper party to enforce section 176 and that the "remedy" of collecting assessed premiums on leased employees is not authorized by section 176 and (2) the RNW policy provides the coverage required under Minnesota law because Minnesota administrative law judges have recognized that RNW is the lawful entity to

pay benefits on behalf of RNW's drivers in stipulated settlements. In their response to ARP's Motion, Plaintiffs further contend that (3) ARP's assessments violate the Minnesota Administrative Procedures Act ("MAPA"), Minnesota Statutes sections 14.01 *et seq.;* (4) ARP's assessments are improper under *Hix v. Minnesota Workers' Compensation Assigned Risk Plan,* 520 N.W.2d 497, 503 (Minn.Ct.App.1994); (5) ERISA preempts sections 79A and 176; and (6) even if Plaintiffs are liable for the delinquent premiums, the calculation of damages involves genuine issues of material fact which preclude summary judgment.

### A. Whether ERISA Preempts Minnesota's Workers' Compensation Laws

As it is a threshold issue, the Court will begin its analysis by considering whether ERISA preempts Minnesota's workers' compensation laws. ERISA Section 514(a), 29 U.S.C. § 1144(a), preempts state laws which "relate to" ERISA employee benefit plans. Plaintiffs contend that the RNW benefit plan is an ERISA "employee benefit plan" and that sections 176 and 79A are preempted because they "relate to" RNW's plan.[6] In interpreting ERISA section 514(a), the Supreme Court has instructed that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)); *see also Kuhl v. Lincoln Nat'l Health Plan,* 999 F.2d 298, 301 (8th Cir.) (noting that "Congress intended the [ERISA] preemption clause to be construed extremely broadly"), *cert. denied,* — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1993). Thus "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Id.*

---

5. ARP's policies satisfy the requirements of Minn.Stat. § 176.181(2). *See* Sheehan Aff. ¶ 4 and Minn.Stat. § 79.252, subd. 3.

6. Plaintiffs' preemption argument with respect to the assessments for the period *prior to* RNW's

creation of an ERISA plan is without merit. The dual coverage to which Plaintiffs object was, during that period, provided by North American, not an ERISA employee benefit plan.

Despite ERISA's broad preemption provision, ERISA contains a savings clause which provides that ERISA does not preempt state laws which relate to employee benefit plans "maintained solely for the purposes of complying with applicable workers' compensation laws, or unemployment compensation or disability insurance laws." ERISA Section 4(b)(3), codified at 29 U.S.C. § 1003(b)(3). The Supreme Court has provided specific guidance on the scope of this exemption. In considering whether ERISA preempted a state law which required employers to provide disability insurance benefits in excess of those provided under the defendants' ERISA benefits plan, the Court explained:

> the [defendants] are [not] completely free to circumvent the [state] Disability Benefits Law by adopting a plan that combines disability benefits inferior to those required by that law with other types of benefits. Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible. A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under § 4(b)(3).

*Shaw,* 463 U.S. at 108, 103 S.Ct. at 2905. The Court further instructed that ERISA does not prevent a state from requiring an employer whose ERISA plan does not meet state insurance requirements to meet those requirements in a separate plan, explaining:

> [W]hile the state may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the state is not satisfied that the ERISA plan comports with the requirements of a disability insurance law, it may compel the employer to maintain a separate plan that does comply.

*Id.,* 463 U.S. at 108, 103 S.Ct. at 2906. *Shaw* concluded that, although Section 514 prohibited states from enforcing disability benefits provisions through regulation of an ERISA plan, states may nonetheless require employers to provide insurance benefits in accordance with their requirements. *Id.*

The reasoning in *Shaw* is directly applicable to the present case. Minnesota Statutes section 176.181 does not purport to regulate ERISA plans. A Minnesota employer is free to provide any manner of insurance under its ERISA benefit plan. Section 176.181 merely requires all Minnesota employers, regardless of the provisions of their ERISA benefits plans, to provide a specific type of workers' compensation insurance—namely insurance issued by an authorized carrier or self-insurance authorized by the Commissioner of Commerce. Section 176.181 is directed solely to that end, and *Shaw* makes clear that ERISA in no way prevents Minnesota from imposing this requirement. Thus to the extent section 176.181 might incidentally "relate to" an employer's decision to provide benefits under an ERISA plan which do not comply with Minnesota law, it is specifically authorized under ERISA's savings clause.

Indeed, at least one Circuit Court has considered precisely the issue presently before the Court and held that ERISA did not preempt a state's workers' compensation insurance requirements. In *Employee Staffing Serv., Inc. v. Aubry,* 20 F.3d 1038 (9th Cir.1994), the Ninth Circuit considered whether ERISA preempted a California statute which required private employers to secure payment of workers' compensation by (1) purchasing workers' compensation insurance from a state-approved carrier or (2) self-insuring under a plan approved by the state Director of Industrial Relations. *Aubry* held that the savings clause contained in Section 4(b)(3) applied and explained that: "[r]egardless of whether the multibenefit ERISA plan duplicates workers' compensation coverage or provides better or worse coverage, the state requires separate approved workers' compensation plans and regulates only the separate workers' compensation plans, leaving the ERISA plans untouched." *Id.* at 1041. *Aubry* concluded that "ERISA preemption does bar the state workers' compensation requirement." *Id.*

Plaintiffs have not distinguished *Shaw* or *Aubry.* Instead, Plaintiffs claim ERISA's savings clause should not apply because *the RNW plan is not "maintained solely for the purposes of complying with applicable work-*

ers' compensation laws." (Pls.' Mem. in Opp. to Mot. at 16.) This fact is irrelevant. The Plaintiffs have focused on the wrong plan. The question presented is whether a workers' compensation insurance policy *required by the state* is "maintained solely for the purposes of complying with applicable workers' compensation laws." Minnesota Statute section 176.181 does not require Plaintiffs to participate in RNW's ERISA plan. As *Shaw* and *Aubry* make clear, the fact that an employer may maintain another plan which provides workers' compensation and other benefits in no way impairs a state's ability to separately regulate workers' compensation insurance.[7] Based on the foregoing, the Court concludes ERISA does not preempt Minnesota Statutes sections 79A and 176.

### B. Whether Plaintiffs are Liable for the Assessed Premiums

In addition to their preemption argument, the Plaintiffs have raised a variety of defenses in response to ARP's premium assessments. Plaintiffs claim ARP is not the proper party to collect the assessed premiums, ARP's assessments violate the Minnesota Administrative Procedures Act, and that they have complied with Minnesota' workers' compensation laws.

### 1. Whether ARP has Authority to Collect its Assessed Premiums

Plaintiffs' claim this case should be dismissed because "Defendant [ARP] is not the proper party to enforce the provisions of Minn.Stat. Ch 176, nor is the remedy sought to be gained by [ARP] authorized by Minn. Stat. Ch 176." (Pls.' Mem. in Supp. of Mot.

at 12.) Plaintiffs allege that, pursuant to Minnesota law, the Commission of the Department of Labor and Industry has exclusive authority to conduct investigations and institute court proceedings to ensure that employers are in compliance with Minnesota's workers' compensation insurance laws.[8] As a result, Plaintiffs claim that the Minnesota Commissioner of Labor and Industry is the proper and exclusive party to collect the assessed workers' compensation premiums in this case.

Plaintiffs' argument is without merit. ARP correctly acknowledges that it has no authority to conduct investigations or force compliance with section 176. However, ARP is not attempting to enforce Minnesota's workers' compensation law.[9] ARP is merely attempting to collect on its contract rights through a common law breach of contract counterclaim. ARP asserts that the Plaintiffs have breached the following contractual provision, which is contained in each of the Plaintiff's workers' compensation contracts with ARP:

**Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis.... This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of: (1) All your officers and employees engaged in work covered by this policy; and (2) All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy.

---

7. In a related argument, Plaintiffs further claim that Minnesota's workers' compensation insurance requirements are preempted because Minn. Stat. § 79A imposes funding, reporting, and financial disclosure requirements in connection with the provision of § 176.181 workers' compensation insurance. *See* Minn.Stat. §§ 79A.02–04. Plaintiffs claim these requirements are imposed on RNW's ERISA plan and therefore are preempted. Again, Plaintiffs have focused on the wrong plan and ignored *Shaw*. Minnesota imposes no obligation upon Plaintiffs to alter the ERISA plans RNW has made available to the leased drivers. These plans need not comply with any of the requirements set forth in § 79A. Instead, the Plaintiffs must have some plan, irrespective of the administration of their ERISA plan, which complies with Minnesota's workers' compensation laws.

8. Plaintiffs quote extensively from Minn.Stat. § 176.184, entitled "Inspections; enforcement." This section provides the Commissioner of Labor and Industry with the authority to inspect and investigate an employer's business premises and records (*id.*, subd. 2), to take oaths, depositions, issue subpoenas, compel document production and apply to the district court for a contempt proceeding (*id.*, subd. 3).

9. The remedies for failing to obtain the appropriate workers' compensation insurance are set forth in Minn.Stat. § 176.181, subds. 3, 4 and 7. These remedies include civil and criminal penalties. ARP does not seek any of the remedies permitted for a "violation" of § 176.181.

(Sheehan Aff. ¶ 11 and *id.*, Ex. A, Pt. 5(C).) The contracts further provide "[y]ou will pay all premium when due." (*Id.*, Pt. 5(D).) Since its counterclaim seeking the assessed premiums is predicated on a common law breach of contract claim, ARP is the "proper party" in this action.

### 2. Whether ARP's Assessments Violate the MAPA

■ Plaintiffs claim ARP may not collect the assessed premium for the leased drivers because it is not authorized to do so by a "rule" promulgated pursuant to the procedural rules set forth in the Minnesota Administrative Procedures Act. This argument may be summarily rejected. ARP is an insurance plan; it is not a state agency. The MAPA applies only to state agencies. Minn. Stat. §§ 14.02(2) and 14.05. ARP has no authority to make law, nor has it purported to do so in the present case. It is not engaging in "rulemaking" by simply attempting to collect premiums on its contract with the Plaintiffs. To the extent the Plaintiffs' claims are based on the assertion that such premiums are not in fact due because the leased drivers were covered under the North American or RNW's ERISA plan, the Court will address such claims on their merits below. For the purposes of ARP's assessment authority, however, the Court finds MAPA does not bar ARP's collection efforts.

### 3. Whether ARP Provided Coverage for which it has not been Compensated

Notwithstanding their procedural defenses, Plaintiffs claim they have provided the workers' compensation insurance required under Minnesota law. Plaintiffs claim (1) the coverage provided by North American and RNW's ERISA plan satisfies the plain language of section 176.181, (2) the coverage provided by North American and RNW's ERISA plan is permissible under the construction given to section 176.181 in *Hix v. Minnesota Workers Compensation Assigned Risk Plan*, 520 N.W.2d 497 (Minn.Ct.App. 1994) and (3) the drivers leased from RNW are not in fact "employees" and therefore ARP did not provide the coverage specified

under Minnesota Statutes sections 176.181 and 79.252, subd. 4.

■ Plaintiffs' first claim is one of statutory construction. Plaintiffs cite the first subdivision of section 176.181, which provides as follows: "Authorization. Any employer responsible for compensation may insure the risk in any manner authorized by law." Plaintiffs claim that RNW's ERISA plan is "authorized by law" because ERISA allows workers' compensation benefits to be provided though an employee benefit plan. *See* 29 U.S.C. § 1002(1) and Def.'s Mem. in Supp. of Mot. at 11. As a result, Plaintiffs claim they have provided insurance which complies with Minnesota's workers' compensation laws.[10]

Plaintiffs' statutory argument is not persuasive. First, this proposed construction is not consistent with the plain language of the workers' compensation insurance statute as a whole or with the related ARP legislation. Subdivision 2 is entitled "compulsory insurance, self-insurers." It specifically states that every Minnesota employer "shall" insure compensation by one of the two methods set forth therein. Minn.Stat. § 176.181, subd. 2. It provides no alternative and in no other way intimates that subsection 1 might be an alternative to this insurance. Indeed, the Minnesota Legislature specifically indicated the mandatory nature of the insurance described in subdivision 2 in ARP's enabling statute, which states:

> Policies and contracts of coverage issued pursuant to Section 79.251, subdivision 4, shall contain usual and customary provision of workers' compensation insurance policies, and shall be deemed to meet the *mandatory workers' compensation insurance requirements of section 176.181, subdivision 2.*

Minn.Stat. § 79.252, subd. 3. Had the Minnesota Legislature intended subdivision 1 to operate as an alternative to subdivision 2, is could simply have done so through the use of the word "or" and would not have described the coverage in subsection 2 as "mandatory."

---

**10.** Plaintiffs ignore the fact that, for a significant portion of the period ARP claims it provided coverage, the leased employees were *not* covered under RNW's ERISA plan but were purportedly covered by a policy issued by North American. *See* note 3, *supra.*

Second, Plaintiffs' proposed construction would render meaningless the regulations Minnesota places on workers' compensation insurance carriers through the authorization requirements and rules promulgated by the commissioner of commerce in subdivision 2. If employers could insure pursuant to *any* "law," they could circumvent these additional requirements. Plaintiffs' proposed construction is similarly not consistent with the enforcement mechanisms and penalties set forth in the remainder of section 176.181. These provisions authorize penalties and enforcement only when employers violate subsection 2. *See* Minn.Stat. § 176.181, subds. 3, 4 and 7. If subsection 1 was intended as an alternative to subsection 2, the commissioner would have no redress against employers who purport to obtain insurance under subsection 1. This construction is unreasonable.[11] The Court concludes that section 176.181 requires Minnesota employers to provide the workers' compensation insurance described in section 176.181, subd. 2.

██ In addition to their statutory argument, Plaintiffs argue they need not comply with section 176.181, subdivision 2 because the Minnesota Court of Appeals "reaffirmed in a nearly identical case that two or more 'employers' may contact between themselves for the provision of workers' compensation benefits." (Pls.' Mem. in Opp. to Def.'s Mot. at 12.) Plaintiffs allege that they need not have provided the leased drivers with workers' compensation insurance, and thus are not liable to ARP, because RNW agreed to provide this insurance.

In support of this second argument, Plaintiffs rely on *Hix v. Minnesota Workers' Compensation Assigned Risk Plan,* 520 N.W.2d 497, 503 (Minn.Ct.App.1994). The facts of *Hix* appear similar to those here. The plaintiff in *Hix* was a trucking company that leased drivers from an out-of-state leasing company. The plaintiff was also an in-

sured of ARP. The leasing company and the plaintiff agreed the leasing company would be liable for workers' compensation benefits. The plaintiff accordingly did not include its leased drivers as covered employees in determining the estimated premium owed to ARP. At the end of the policy period, ARP audited plaintiff's records, concluded the drivers were employees covered under its policy and assessed a delinquent premium. ARP claimed that even if the leasing company agreed to be liable for workers' compensation benefits, *both* the leasing company *and* the plaintiff were separately required to obtain compensation insurance from an insurance carrier authorized to do business in Minnesota under section 176.181, subd. 2. *Hix* rejected ARP's claim and held that where one employer agrees to be liable for shared employees' workers compensation claims, only one employer need obtain the insurance specified in 176.181, subd. 2. *Hix,* 520 N.W.2d at 505–06.

The facts in this case are distinguishable from those in *Hix.* Unlike the leasing company in *Hix,* the coverage RNW provided to Plaintiffs in this case was not issued by an insurance carrier authorized to do business in Minnesota. This difference is critical. *Hix* did not, as Plaintiffs purport, hold that any agreement regarding liability for workers' compensation insurance would satisfy the requirements of section 176.181, subd. 2. Instead, *Hix* specifically and unequivocally relied on the fact that the leasing company which agreed to insure the plaintiff's drivers obtained its coverage through "a 'real' insurance company *which was duly authorized to transact the business of insurance in the Minnesota* throughout the entire policy term." *Hix,* 520 N.W.2d at 506 (emphasis added).

Moreover, in reaching its decision, *Hix* cited and reaffirmed the holding of *RNW*

---

11. Plaintiffs' claim subdivision 1 must provide an alternative method for insuring workers' compensation losses because this subdivision must be given "some effect." In response to this argument, ARP has provided an extremely thorough review of the legislative history of section 176.181. (Def.'s Mem. in Supp. of Mot. at 11–14.) This legislative history presents overwhelming evidence that subdivision 1 does not create an additional means of complying with Minneso-

ta's workers' compensation statute and that it instead refers only to the provisions set forth in the present subsection 2. In contrast, the Plaintiffs have provided no authority from Minnesota caselaw or the legislative history of section 176.181 to support its construction. Indeed, Plaintiffs have provided no evidence the Minnesota Legislature has ever authorized lawful coverage other than pursuant to subdivision 2.

*Assoc., Inc. v. Minnesota Workers' Compensation Assigned Risk Plan,* 764 F.Supp. 562 (D.Minn.1991). *RNW* is directly analogous to the facts presented in this case. In *RNW,* RNW leased drivers to various companies and agreed to provide workers' compensation insurance. Based upon this, the lessee companies did not purchase workers' compensation insurance. RNW purchased insurance from a carrier that was not authorized to underwrite insurance in Minnesota. As in the present case, ARP assessed premiums to the lessee trucking companies based on the leased drivers, and the lessees objected on the grounds that RNW provided the requisite insurance. The Court upheld ARP's premium assessments because the lessees "[did] not have workers' compensation coverage from an insurer licensed in Minnesota." *Id.* at 565. The Court finds *Hix* and *RNW* dispositive.[12] The coverage RNW provided to Plaintiffs does not satisfy section 176.181, subd. 2.

In their final defense, Plaintiffs claim they are not liable for the assessed premiums because they were not "employers" of the leased drivers. This determination is essential to determining the Plaintiffs' liability. Section 176.181 required Plaintiffs to provide every "employee" with a specific type of workers' compensation coverage—namely coverage supplied by an authorized carrier or by the Plaintiffs pursuant to written order of the commissioner of commerce. North American and RNW did not provide this coverage. Plaintiffs contracted with ARP for workers' compensation coverage for its "employees" which satisfied *all* its obligations under Minnesota Law. *See* Minn. Stat. § 79.252, subd. 4 (providing that ARP's "policies and contracts of coverage ... shall be deemed to meet the mandatory workers' compensation insurance requirements of sec-

tion 176.181, subd. 2"). Pursuant to its contracts with the Plaintiffs, ARP provided the coverage specified by section 176.181 to Plaintiffs' "employees." As a result, if the leased drivers were in fact Plaintiffs' "employees," as that term is construed under the tests set forth in *Hix,* ARP provided coverage to them and Plaintiffs will be liable for that coverage in the amount specified in their agreement with ARP.[13]

Although raised in the Defendant's Motion, neither party discussed or provided evidence regarding whether the Plaintiffs were the "employers" of the leased drivers. In ruling on the Defendant's initial summary judgment motion in this case, the Court relied on *RNW* and concluded that "Plaintiffs have pointed to no differences between the leasing arrangements in this case from those in the *RNW* case. Plaintiffs should therefore be considered employers for the purpose of workers' compensation." (Mem.Op. and Order dated Aug 5, 1994.) Subsequent to that Order, the Minnesota Court of Appeals rendered its decision in *Hix* and, looking beyond the lease agreements to the facts surrounding the particular relationship between the drivers and the lessee companies, determined that the leased drivers were *not* employees for the purposes of section 176.181, subd. 2. It is not clear from *Hix* whether the employment relationship between the lessor and lessee was any different than the relationship in *RNW* or the relationship in this case. In *Hix,* the Minnesota Court of Appeals specifically set forth the tests to be applied in determining whether an employment relationship exists for the purposes of Minnesota's workers' compensation laws. The Court finds the record currently before it to be insufficient to independently apply those tests. However, the Court finds that this

---

12. Plaintiffs also argue that the coverage provided by RNW satisfies Minnesota law because Minnesota administrative law judges have recognized that RNW is the lawful entity to pay benefits on behalf of RNW's drivers in stipulated settlements. Based on the clear language of section 176.181, subd. 2, *Hix* and *RNW,* the Court rejects this assertion. Moreover, the fact that administrative law judges have *permitted* RNW to pay workers' compensation benefits has no bearing on whether the lessees of such drivers were required to obtain the mandatory insurance under Minnesota law.

13. In its Motion, ARP seeks a determination that its premium assessments are proper. Plaintiffs claim the amount of ARP assessment is too high because it is based on the fee Plaintiffs paid to RNW and not the actual wages paid to the drivers. (*See* Pls.' Mem. in Opp. to Def.'s Mot. at 21 and Lindstrom Aff. ¶ 3.) Based on the Plaintiffs' submissions, the Court finds there is a genuine issue of material fact with respect to the proper amount of the premium assessment and will consequently deny ARP's Motion in this regard.

issue should be reconsidered in light of *Hix* and will accordingly vacate that portion of the August 5, 1994 Memorandum Opinion and Order which concluded Plaintiffs were employers for the purpose of Minnesota's workers' compensation laws.

Whether the Plaintiffs were the "employers" of the leased drivers and whether the ARP's premium assessments are accurate are solely questions of state law. Having resolved the federal issue raised in the Plaintiffs' Complaint and the state law issues which were fully briefed and argued, the Court will dismiss the remainder of this action without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### C. Summary

The Court finds ERISA does not preempt Minnesota Statutes sections 79A and 176. The Court further finds ARP is the proper party to collect the assessed premiums, said assessments do not violate the MAPA, and the insurance provided by North American and RNW's ERISA plan does not comply with Minnesota's workers' compensation laws. The sole remaining issues in this matter are (1) whether the Plaintiffs were "employers" of the leased drivers during the periods of ARP's assessments and (2) the proper amounts of such assessments.

### Conclusion

Based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Plaintiff Skogquist Trucking and Excavating Inc.; Darrell Nelson d/b/a D & N Trucking; and D & N Trucking, Inc.'s Motion for Summary Judgment (Civil No. 1270, Doc. No. 38) is **DENIED**;

(2) Plaintiff Walters Rubbish, Inc.'s Motion for Summary Judgment (Civil No. 1271, Doc. No. 35) is **DENIED**;

(3) Defendant Minnesota Workers' Compensation Assigned Risk Plan's Motions for Summary Judgment (Civil No. 1270, Doc. No. 30 and Civil No. 1271, Doc. No. 28) are **GRANTED IN PART AND DENIED IN PART** as follows:

(a) Defendant's Motions are **GRANTED** with respect to Plaintiffs' declaratory judgement claim and the Court finds

that ERISA does not preempt Minnesota Statutes sections 79A or 176; and

(b) Defendant's Motions are **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the portion of the Court's August 5, 1994 Memorandum Opinion and Order (Civil No. 1270, Doc. No. 24; Civil No. 1271, Doc. No. 22) concluding that Plaintiffs were "employers" of the drivers leased from RNW Associates, Inc. for the purposes of Minnesota's workers' compensation laws is **VACATED;** the remaining state law claims alleged in Plaintiffs' Complaint and Defendant's Counterclaim are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**